## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 13-41073 |
| | ) | Chapter 7 |
| KEVIN L. JACKSON, | ) | |
| | ) | Hon. Jacqueline P. Cox |
| Debtor. | ) | |
| | ) | Hearing Date:  September 28, 2017 |
| | ) | Hearing Time: 9:30 a.m. |

## COVER SHEET FOR FIRST AND FINAL APPLICATION FOR
## COMPENSATION AND EXPENSE REIMBURSEMENT OF SEYFARTH SHAW LLP
## AS COUNSEL TO CHAPTER 7 TRUSTEE, GUS A. PALOIAN

<u>Name of Applicant</u>:                                          Seyfarth Shaw LLP

Authorized to Provide
<u>Professional Services to</u>:                                 Chapter 7 Trustee, Gus A. Paloian

Date of Retention:                                             July 27, 2016, retroactive to January 1, 2016

Period for which Compensation                                  January 1, 2016 through the close of the case
<u>and Reimbursement is Sought</u>:

Amount of Final Compensation
<u>Sought</u>:                                                  $28,087.00

Amount of Final Expense
<u>Reimbursement Sought</u>:                                    $   313.73

<u>This is a</u>:      __X__ Final          _____ Interim Application.

<u>Prior Applications</u>:  None

Dated:  September 5, 2017                                       Respectfully submitted,

                                                               GUS A. PALOIAN, not individually or
                                                               personally, but solely in his capacity as the
                                                               Chapter 7 Trustee of  the Debtor's Estate,

                                                               By:/s/ Gus A. Paloian
                                                                   Gus A. Paloian (06188186)
                                                                   Bret M. Harper (6299968)
                                                                   SEYFARTH SHAW LLP
                                                                   233 South Wacker Drive
                                                                   Suite 8000
                                                                   Chicago, Illinois 60606
                                                                   Telephone:  (312) 460-5000
                                                                   Facsimile:  (312) 460-7000

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 13-41073 |
| | ) | Chapter 7 |
| KEVIN L. JACKSON | ) | |
| | ) | Hon. Jacqueline P. Cox |
| Debtor. | ) | |
| | ) | Hearing Date:  September 28, 2017 |
| | ) | Hearing Time: 9:30 a.m. |

**FIRST AND FINAL APPLICATION FOR COMPENSATION AND EXPENSE
REIMBURSEMENT OF SEYFARTH SHAW LLP AS COUNSEL
TO CHAPTER 7 TRUSTEE GUS A. PALOIAN
FROM JANUARY 1, 2016 THROUGH THE CLOSE OF THE CASE**

Pursuant to Sections 105(a) and 330 of the United States Bankruptcy Code, Seyfarth

Shaw LLP ("Seyfarth"), as counsel to Gus A. Paloian, not individually or personally, but solely

in his capacity as the duly-appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate

(the "Estate") of the above-captioned debtor (the "Debtor"), hereby submits its First and Final

Application for Compensation and Expense Reimbursement (the "Application") for legal

services performed, and expenses incurred, during the period of January 1, 2016, through the

close of the case (the "Application Period").  In support of this Application, Seyfarth respectfully

represents, as follows:

## I.  INTRODUCTION

1.      Seyfarth makes this Application pursuant to:  (A) Sections 330, 503(a) and (b),  and

507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101 through 1330, as amended (the

"Bankruptcy Code");  (B) Rule 2016 of the Federal Rules (the "Rules") of Bankruptcy Procedure;  (C)

certain applicable provisions of the Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed under 11 U.S.C. § 330, as adopted by the Office of the United States

Trustee;  (D) Rule 5082-1 of the Local Bankruptcy Rules (the "Local Rules") for the United States

Bankruptcy Court for the Northern District of Illinois (the "Court");  (E) that certain Order of the Court,

139691053v.1

dated July 27, 2016, authorizing Seyfarth's retention as counsel to the Trustee effective as of April 7, 2016 (the "Seyfarth Retention Order"); and (F) other applicable case law discussed herein (collectively, the "Authorities for Relief"). In this regard, Seyfarth has made every reasonable effort to comply with the Authorities for Relief.

2.      In making this Application, Seyfarth respectfully seeks an Order of this Court awarding: (1) final allowance of compensation in the amount of $28,087.00for professional services rendered by Seyfarth on behalf of the Trustee during the Application Period; and (2) final reimbursement of actual and necessary expenses in the amount of $313.73 incurred by Seyfarth in rendering such professional services to the Trustee in the Case.

## II. JURISDICTION

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue of this Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A), (M), and/or (O). The predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 330, and 331.

## III. BACKGROUND

**A.      Case Background**

4.      On October 21, 2013, the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code"), thereby commencing the above-captioned Case.

5.      On or about October 21, 2013, the Office of the United States Trustee appointed Gus A. Paloian as the Chapter 7 trustee for the Estate.

6.      Thereafter, Gus A. Paloian was appointed as Chapter 7 Trustee for the Estate.

7.      On January 13, 2014, the Trustee filed an Initial Report of Assets with the Court.

2

39691053v.1

8.      Seyfarth was retained as counsel for the Trustee pursuant to the Seyfarth Retention Order dated June 17, 2015.  A copy of the Seyfarth Retention Order is attached hereto as **Exhibit 1.**

**B.      Summary of Services Rendered by Seyfarth to the Trustee**

9.      This is Seyfarth's First and Final Application for compensation and expense reimbursement in the Case.

10.     Seyfarth has neither previously received nor been awarded any compensation of fees, or reimbursement of expenses incurred, related to the Case during the Application Period.

11.     In accordance with Section 504 of the Bankruptcy Code, Rule 2016, and the U.S. Trustee Guidelines, no payments have heretofore been made, promised to, or applied by Seyfarth for services rendered or to be rendered or expenses incurred in any capacity whatsoever in connection with the Case. Moreover, no agreement or understanding exists between Seyfarth and any other entity for a division of compensation or expense reimbursement to be received herein or in connection with the Case, other than as permitted under the Bankruptcy Code and Rules.

12.     The Fees requested by Seyfarth for legal services rendered to the Trustee during the Application Period aggregate $28,087.00.

13.     The fees for actual services performed to date by Seyfarth equal $27,457.00.  In addition to the actual services performed by the Trustee to date, Seyfarth estimates that an additional two (2) hours will be expended in order to close the case, resulting in additional fees and expenses of $630.00, for a total fee request of $28,087.00.

14.     All of the Fees for which Seyfarth requests final allowance and payment of compensation relate to the Application Period and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee.  During the Application Period, Seyfarth has rendered 69.50 hours of professional services.

15.     A breakdown of the Fees by each Seyfarth professional; each such professional's title, hourly rate, and total hours expended in providing legal services; and the value attributable to such legal services is, as follows:

3

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | N/A | 15.00 | $10,423.00 |
| Christopher J. Harney | Associate | $415.00 | N/A | 14.60 | $6,059.00 |
| Bret Harper | Associate | $355.00 | $355.00 | .30 | $106.50 |
| Jennifer M. McManus | Paralegal | $315.00 | $315.00 | 32.10 | $10,083.00 |
| Julie Ziegler | Case Assistant | $105.00 | $105.00 | 7.50 | $785.50 |
| **TOTAL:** | | | | **69.50** | **$27,457.00** |

16.     During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

17.     All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

18.     Seyfarth respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

**C.     Time and Expense Records**

19.     Seyfarth maintains written records of the time expended by its professionals.  These time records are maintained:  (i) contemporaneously with the rendition of services by each Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

4

20.     Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 2** and which are incorporated herein by reference, set forth in detail:  (i) the services which Seyfarth rendered on behalf of the Trustee, (ii) the dates upon which such services were rendered, and (iii) the amount of time spent on the services in one-tenth of one hour increments.

21.     Seyfarth also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with rendering services to the Trustee.  A complete listing of the Expenses and the amounts for which reimbursement is sought is attached hereto as **Exhibit 3** and incorporated herein by reference.

**D.      Breakdown of Fees by Category of Services Rendered**

25.     For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into five (5) categories, as follows:  (i) Case Administration;  (ii) Claims Review and Analysis;  (iii) Investigation of Estate Claims/Litigation; (iv) Objection to Exemptions and Settlement; and (v) Fee Applications (Attorney, Accountant and Trustee).

**CASE ADMINISTRATION (14.90  HOURS VALUED AT $3,946.50)**

22.     During the Application Period, Seyfarth performed 14.90 hours of services having a value of $3,946.50 on behalf of the Trustee on matters related to case administration including:

A.      Conferences, teleconferences, and/or correspondence regarding assets and liabilities of the Estate, generally;

B.      Investigating assets and case strategy and preparing case reports regarding status and strategy;

C.      Preparing the application to retain accountant; and

D.      Preparing the application to retain counsel.

5

23.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | N/A | 1.10 | $764.50 |
| Christopher J. Harney | Associate | $415.00 | N/A | .20 | $83.00 |
| Bret M. Harper | Associate | $355.00 | $355.00 | .30 | $106.50 |
| Jennifer M. McManus | Paralegal | $315.00 | $315.00 | 7.60 | $2,394.00 |
| Julie Ziegler | Former Case Assistant | $105.00 | $105.00 | 5.70 | 598.50 |
| **TOTAL:** | | | | **14.90** | **$3,946.50** |

### CLAIMS REVIEW AND ANALYSIS (7.60 HOURS VALUED AT $2,394.00)

24.     During the Application Period, Seyfarth performed 7.60 hours of services having a value of $2,394.00 on behalf of the Trustee on matters related to claims review and analysis including:

A.      Conducting review and analysis of claims resolution; and

B.      Preparing related analysis spreadsheet.

25.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | $315.00 | $315.00 | 7.60 | $2,394.00 |
| **TOTAL:** | | | | **7.60** | **$2,394.00** |

6

## INVESTIGATION OF ESTATE CLAIMS/LITIGATION
### (18.00 HOURS VALUED AT $8,874.50)

26.     During the Application Period, Seyfarth performed 18.00 hours of services, having  a

value of $8,874.50 on behalf of the Trustee on matters related to settling claims of the Estate, including:

A.     Conferences, teleconferences, and/or correspondence regarding strategizing and negotiating the settlement of two class action lawsuits in which Debtor was involved;

B.     Preparation of settlement motions; and

C.     Effect/finalize settlements.

27.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | N/A | 9.00 | $6,253.00 |
| Jennifer M. McManus | Paralegal | $315.00 | N/A | 8.00 | $2,518.50 |
| Julie Ziegler | Former Case Assistant | $105.00 | N/A | 1.00 | $103.00 |
| **TOTAL:** | | | | **18.00** | **$8,874.50** |

## OBJECTION TO EXEMPTIONS (24.70 HOURS VALUED AT $10,914.50)

28.     During the Application Period, Seyfarth expended 24.70 hours, worth a value of

$10,914.50 on behalf of the Trustee on matters of objecting to Debtor's claimed exemptions, including:

A.     Preparing, revising, finalizing and filing Objection to Debtor's Exemptions regarding property of the Debtor;

B.     Attending original and continued hearings on Objection to Debtor's Exemptions; and

C.     Communications with Debtor regarding settlement negotiations and Debtor's response to Objection.

7

29.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | N/A | 4.90 | $3,405.50 |
| Christopher J. Harney | Associate | $415.00 | N/A | 14.40 | $5,976.00 |
| Jennifer M. McManus | Paralegal | $315.00 | N/A | 4.60 | $1,449.00 |
| Julie Ziegler | Former Case Assistant | $105.00 | N/A | .80 | $84.00 |
| **TOTAL:** | | | | **24.70** | **$10,914.50** |

## FEE APPLICATIONS (9.80 HOURS VALUED AT $3,087.00)

30.     During the Application Period, Seyfarth spent 9.80 hours, worth a value of $3,087.00, preparing (i) Seyfarth Shaw LLP's first and final fee application, (ii) Kutchins, Robbins & Diamond, Ltd.'s first and final application, and (iii) Chapter 7 Trustee Gus A. Paloian's first and final application, which represents approximately 5.0% of the total fees sought for services rendered during the Application Period.

31.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | $315.00 | $315.00 | 9.80 | $3,087.00 |
| **TOTAL:** | | | | **9.80** | **$3,087.00** |

8

**Incurred Expenses**

32.      As set forth in attached **Exhibit 3**, Seyfarth advanced $313.73 in Expenses on behalf of the Estate during the Application Period.

33.      A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

34.      Additionally, Seyfarth advanced out-of-pocket expenses on behalf of the Estate for online legal research conducted through Pacer, Shepard's, Law Review and Lexis services.  The charges for these expenses are *actual and at cost*.

35.      In this respect, there is no mark-up of the online legal research charges and no profit derived by Seyfarth from them.  Seyfarth ordinarily and customarily passes its discount on such services *through to the client*—in this instance, the Estate—billing the client only what Seyfarth is actually charged for use of the online resources.

36.      The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

37.      Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Estate, at cost.

## IV.  RELIEF REQUESTED

38.      Seyfarth respectfully requests that the Court allow and award it on a final basis the Fees, consisting of $28,087.00 for additional professional services rendered to the Trustee, and the Expenses, in the amount of $313.73 incurred in relation to such services (collectively, the "Requested Fees and Expenses").

39.      A proposed order providing for the requested relief is attached hereto for the Court's consideration.

9

## V.  **BASIS FOR THE REQUESTED RELIEF**

A.      **Compensation Standards**

40.      Pursuant to Section 331 of the Bankruptcy Code, a professional person employed under

Section 327 may generally apply for First and Final compensation from a bankruptcy court.  See 11

U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the professional person "reasonable

compensation for actual, necessary services rendered[.]" 11 U.S.C. § 330(a)(1)(A).

41.      In determining the "extent and value of compensation," this Court has endorsed and

applied the "'lodestar' approach—multiplying the number of actual and necessary hours reasonably

expended by a reasonable hourly rate[.]" *In re* Wildman, 72 B.R. 700, 712 (Bankr. N.D. Ill. 1987)

(Schmetterer, J.);  accord *In re* UNR Indus., Inc., 986 F.2d 207, 210-11 (7th Cir. 1993) (lodestar approach

provides fair compensation under Section 330);  see also City of Burlington v. Dague, 505 U.S. 557, 562,

112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992) ("The 'lodestar' figure has, as its name suggests, become

the guiding light of our fee-shifting jurisprudence.  We have established a 'strong presumption' that the

lodestar represents the 'reasonable' fee[.]").

42.      To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has "emphasize[d]

that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same compensation as they

would earn in performing similar services outside the context of bankruptcy."[1] *In re* UNR Indus., Inc.,

986 F.2d at 210 (emphasis added).  The statutory aim is twofold:  (A) "that attorneys be reasonably

compensated," and (B) "that future attorneys not be deterred from taking bankruptcy cases due to a failure

to pay adequate compensation." UNR Indus., Inc., supra;  see also *In re* Farley, Inc., 156 B.R. at 210

("The purpose of § 330 was to encourage bankruptcy practitioners not to leave the field in favor of more

lucrative areas of the law.") (citing legislative history to Section 330).

---

[1] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy
matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases."  In re
UNR Indus., Inc., 986 F.2d at 208-09;  see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993)
(Schmetterer, J.) (quoting same).

39691053v.1

43.     As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly "stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"—that is, the attorney's "standard hourly rate." Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993);  see Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some 'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (In re Continental Ill. Sec. Litig.), 962 F.2d 566, 568 (7th Cir. 1992)).

44.     Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate . . . is considered to be the presumptive market rate." Small, 264 F.3d at 707.  Moreover, "[t]he lawyer's regular rate is *strongly presumed* to be the market rate for his or her services." Moriarty v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S. 1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001);  see Moriarty v. Svec, 429 F.3d 710, 718 (7th Cir. 2005) (quoting same);  see also Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co., 76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly fee, one counsel would charge 'to the meanest villain', *is* the market rate for that lawyer's services.") (emphasis added and quoting Barrow v. Falck, 977 F.2d 1100, 1106 (7th Cir. 1992)), cert. denied sub nom. Mason & Dixon Lines v. Central States, S.E. & S.W. Areas Pension Fund, 519 U.S. 811, 117 S. Ct. 56, 136 L. Ed. 2d 19 (1996).

45.     Under this principle, "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court." Gusman, 986 F.2d at 1150;  accord In re Spanjer Bros., Inc., 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.) ("Generally, so long as the rates being charged are the applicant's normal rates charged in bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of reasonableness.").

46.     "Only if an attorney is unable to provide evidence of her actual billing rates should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the community charge paying clients for similar work.'" Mathur v. Board of Trs. of S. Ill. Univ., 317 F.3d 738, 743 (7th Cir. 2003) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999));  see also

11

Gusman, 986 F.2d at 1151 ("the ability to identify a different average rate in the community" is an

impermissible reason to depart from an attorney's billing rate).

47.    Accordingly, because Seyfarth bills the vast majority of its time at a set rate for paying

clients and spends only a very small percentage of time on cases covered by fee-shifting statutes, "there is

a strong presumption that such counsel could have billed out remaining time at the rate normally

charged." In re Farley, Inc., 156 B.R. at 211.

48.    Additionally, under generally accepted standards, if the services of an attorney employed

under Section 327 are reasonably likely to benefit a debtor's estate, they should be compensable.  See

Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distributors, Inc.), 157 F.3d 414, 421

(5th Cir. 1998);  In re Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996);  2 Lawrence P. King,

Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999);  cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I).  In this

same context, "[n]ecessary services are those that aid the professional's client in fulfilling its duties under

the Code." In re Ben Franklin Retail Store, Inc., 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

49.    Thus, the determination of benefit to the Estate is not constrained to a dollar-for-dollar

measurement, such that each dollar's worth of legal services must bring a cash dollar into the Estate in

order to justify equivalent compensation to counsel.  See In re Lifschultz Fast Freight, Inc., 140 B.R. 482,

488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have always included services that aid in

the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those

services result in a monetary benefit to the estate.");  accord In re Rite Way Reproductions, Inc., 1998

Bankr. LEXIS 1080, at *6-*7 (Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further

observing that "factors other than the economic impact on the estate of actions taken should be considered

in the 'benefit to the estate' analysis");  In re Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind.

1993) (same);  see, e.g., Ben Franklin Retail Store, Inc., supra ("[A] trustee (or First and Final trustee)

performs necessary services when he carries out the duties set forth in § 704 of the Code.");  JMP-Newcor

Int'l, Inc. v. Seyfarth, Shaw, Fairweather & Geraldson (In re JMP-Newcor Int'l, Inc.), 1998 U.S. Dist.

LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy court's award of fees to firm for

advising committee in reasonable way and in good faith despite lack of direct monetary benefit to debtor and estate).

50.      Instead, other factors, such as "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy case and related adversary proceedings," also support awards of compensation.  *In re* Spanjer Bros., Inc., 191 B.R. at 748.

51.      As previously stated, the legal services for which Seyfarth requests allowance and payment of compensation relate to the Application Period, and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee during that time.

52.      Seyfarth respectfully submits that such legal services have, in all respects, been reasonable, necessary, and beneficial to the Estate.  In this connection, these services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the matters which they concerned.

53.      Further, they promoted the bankruptcy process and the administration of the Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the Bankruptcy Code and Rules.

54.      For purposes of this Application, Seyfarth has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

55.      Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar" rate—during the Application Period was $395.06.

56.      During the Application Period, Seyfarth's discounted hourly billing rates for professionals providing services in the Case ranged from:  (A) $355.00 to $695.00 for attorneys, and (B) $105.00 to $315.00 for paralegals or para-professionals.

13

57.      In all these respects, the compensation which Seyfarth has requested herein is reasonable based upon the customary compensation charged by comparably-skilled practitioners in either non-bankruptcy or bankruptcy cases.

58.      Moreover, it is less than the fees which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents even less than its lost opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of employment by the Trustee in the Case precluded such employment.

59.      In rendering legal services to the Trustee, and in making this Application, Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

**B.      Expense Reimbursement Standards**

60.      With respect to reimbursing expenses, the Court may award a professional person "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

61.      "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client."  In re Spanjer Bros., Inc., 191 B.R. at 749;  see In re Wildman, 72 B.R. at 731.

62.      In this connection, Seyfarth has requested reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these expenses were incurred because they were required to accomplish the proper representation of the Trustee and the furtherance of the Estate's interests in the Case.  As previously indicated, Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

63.      Seyfarth submits that the Expenses are reimbursable and do not constitute "overhead," which the Court discussed and described, as follows:

64.      Expenses which are overhead are not compensable because they are not built into the normal hourly rate charged by the billing professional.  Convent Guardian, 103 Bankr. at 939;  Wildman,

14

72 Bankr. at 731. Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost." _In re Thacker_, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting <u>Jensen-Farley Pictures</u>, 47 Bankr. at 584)[2].

65.     In contrast, Seyfarth charges for its out-of-pocket expenses only, including the incurred Expenses, to the particular clients who use them—in this instance, the Estate. As previously discussed, the incurred Expenses included herein are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

66.     Such "user fee" expense billing closely adheres to the Seventh Circuit's market rate billing approach. In this respect, the Seventh Circuit's market approach to compensation extends equally to the reimbursement of expenses, including those for online research. See _In re_ Hunt's Health Care, Inc., 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993);   accord _In re_ Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a relevant factor in setting compensation for services under [330](a)(1), it would logically seem also to be a relevant factor in determining what categories to treat as reimbursable expenses under (a)(2).").

67.     For example, in <u>Continental Illinois Securities</u>, <u>supra</u>, the Seventh Circuit reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket expenses of using a computerized legal research service (LEXIS). He thought those expenses should be part of the lawyers' overhead. This was another clear error. If computerized research expenses were customarily treated in this fashion, lawyers' hourly rates would be even higher than they are, requiring an adjustment in the lodestar. _But the more important point is that the market—the paying,_

---

[2] <u>In re GSB Liquidating Corp.</u>, 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.); <u>see</u> In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable."); <u>see also</u> 2 Lawrence P. King, <u>Collier on Bankruptcy</u> ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost."); <u>see, e.g.</u>, Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, _such as rent, heat, and the like_, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added)

*arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just as it reimburses their paralegal expenses, rather than requiring that these items be folded into overhead.* Markets know market values better than judges do. And as with paralegals, so with computerized research: if reimbursement at market rates is disallowed, the effect will be to induce lawyers to substitute their own, more expensive time for that of the paralegal or the computer, 962 F.2d at 570 (emphasis added); accord Harman v. Lyphomed, Inc., 945 F.2d 969, 976 (7th Cir. 1991) ("The attorneys also claim that the court erred in excluding the roughly $10,000 expended in computer-assisted research. The court felt that the expense 'is part of the amount allowed for attorney's fees.' *We must reverse the district court here.* Computer-assisted research fees—so long as reasonably incurred—in theory reduce the number of attorney hours otherwise needed for (presumably) more time-consuming manual research and are therefore compensable[. . . . as] expenses[.]") (emphasis added).

68.     The Seventh Circuit has remained consistent on this subject and has repeatedly required attorney reimbursement for computerized legal research charges. See, e.g., Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn our attention to the award of costs, we consider MTC's request that the costs of computerized legal research be subtracted from the award. *MTC claims that these expenses are better characterized as overhead in the same way that maintenance of a law firm library is. We reject this claim.*") (emphasis added), cert. denied, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846 (1996).

69.     Accordingly, lower courts in this District—including numerous judges of this Court— have adhered to this controlling precedent. See, e.g., Shula v. Lawent, 2004 U.S. Dist. LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal research charges" as "costs" that were "both reasonable and necessary"); Stamm v. Provident Life & Accident Ins. Co., 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett, J.) ("The Seventh Circuit has held that computerized legal research is reimbursable as a reasonable expense of litigation."); In re Price, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992) (Squires, J.) (allowing full reimbursement of Lexis expense), aff'd sub nom. Price v. United States (In re Price), 42 F.3d 1068 (7th Cir. 1994); In re Met-L-Wood Corp., 103 B.R. 972, 977 (Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as "'actual and necessary' expenses"), aff'd, 115 B.R. 133 (N.D. Ill. 1990); In re Prairie Cent. Ry. Co., 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of the Court to

16

allow reimbursement of Lexis  and Westlaw research charges);  *In re* Wildman, 72 B.R. at 732 ("This

Court adopts the view that computer research time that is both necessary and attributable to a particular

client *or* case is reimbursable under Section 330(a)(2).") (emphasis in the original);  *In re* UAL Corp.,

Case No. 02-48191-ERW (Wedoff, C.J.), *Order Approving Quarterly Application Of Vedder, Price,*

*Kaufman & Kammholz, P.C. For Allowance And Payment Of Compensation And Reimbursement Of*

*Expenses* (Dkt. No. 15670) (allowing full reimbursement of $8,085.93 in online legal research charges);

*In re* Eagle Food Centers, Inc., Case No. 03-15299-CAD (Doyle, J.), *Order Approving Third And Final*

*Application Of Skadden, Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of*

*Compensation And Reimbursement Of Expenses* (Dkt. No. 1136) (allowing full expense reimbursement of

$21,888 in "Computer Legal Research" during case period) (unpublished decision);  *In re* Conseco, Inc.,

Case No. 02-49672-CAD (Doyle, J.), *Order Approving Final Application Of Jenner & Block LLP For*

*Allowance Of Administrative Claim For Compensation And Reimbursement Of Expenses* (Dkt. No. 6987)

(allowing expense reimbursement of $139,934.07, including Westlaw and Lexis charges);  *In re* Wickes,

Inc., Case No. 04-02221-BWB (Black, J.), *Findings Of Fact And Conclusions Of Law In Support Of*

*Order Awarding To DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance*

*And Payment Of First and Final Compensation And Reimbursement Of Expenses* (Dkt. No. 2935)

(allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

70.     Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid down

guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs containing a

description so detailed as to make it impossible economically to recover [ ] costs[, but] [r]ather [  ] [is]

required to provide the best breakdown obtainable from retained records."  Northbrook Excess & Surplus

Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991).

71.     In seeking reimbursement for the Expenses herein, Seyfarth has made every attempt to

fully comply with these dictates.

## VI. <u>NO PRIOR REQUEST</u>

72.      No prior request for the relief requested by this Application has been made to this Court

or to any other court.

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.      Allowing Seyfarth final compensation in the total amount of $28,087.00;

B.      Allowing Seyfarth final reimbursement of expenses in the amount of $313.73;

C.      Authorizing the Trustee to make payment of the requested Fees and Expenses to
         Seyfarth from funds on hand in the Estate as part of his final distribution in the
         case; and

D.      Granting such other and further relief as this Court deems just and appropriate.


Dated:  September 5, 2017                 Respectfully submitted,

                                          GUS A. PALOIAN, not individually or
                                          personally, but solely in his capacity as the
                                          Chapter 7 Trustee of  the Debtor's Estate,


                                          By:/s/ Gus A. Paloian_____
                                               Gus A. Paloian (06188186)
                                               Bret M. Harper (6299968)
                                               SEYFARTH SHAW LLP
                                               233 South Wacker Drive, Suite 8000
                                               Chicago, Illinois 60606
                                               Telephone:  (312) 460-5000
                                               Facsimile:  (312) 460-7000

18

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | BK No.:   13-41073 |
| | ) | |
| KEVIN L. JACKSON, | ) | Chapter: 7 |
| | ) | Honorable Jacqueline Cox |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

### ORDER AUTHORIZING CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY SEYFARTH SHAW LLP AS HIS COUNSEL, RETROACTIVELY

This matter having been presented to the Court on the Chapter 7 Trustee's Application to Employ Seyfarth Shaw LLP ("Seyfarth") As His Counsel Retroactively (the "Application"), filed on July 13, 2016 by Gus A. Paloian, not individually, but solely as chapter 7 trustee of the bankruptcy estate of Kevin L. Jackson (the "Trustee"). The Application, upon the accompanying Affidavit of Bret M. Harper, requests entry of an order authorizing the employment of Seyfarth to represent the Trustee in the above-referenced case.

Having considered the Motion, this Court finds and concludes that: (i) this Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334 and Internal Operating Procedure 15 of the United States District Court for the Northern District of Illinois; (ii) venue is proper in this District under 28 U.S.C. § 1409(a); (iii) this proceeding is a core proceeding under 28 U.S.C. § 157(b)(2); and (iv) due and proper notice of the Motion has been given and no other or further notice is required. In light of the foregoing,

IT IS ORDERED THAT:

1. The Application is granted.

2. The notice of the Application as given is deemed sufficient and proper.

3. The Trustee is hereby authorized, pursuant to sections 327 and 328 of the Bankruptcy Code, to employ Seyfarth Shaw LLP as his counsel, retroactive to January 1, 2016, as set forth in the Application.

4. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Enter:

J. Cox

*Jacqueline P. Cox*

Honorable Jacqueline Cox
United States Bankruptcy Judge

Dated:   JUL 27 2016

**Prepared by:**

Bret M. Harper (6299968)
SEYFARTH SHAW LLP
131 South Dearborn Street
Chicago, Illinois 60603-5577
Telephone: (312) 460-5000
bharper@seyfarth.com

# EXHIBIT 2

## CASE ADMINISTRATION

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 01/28/16 | Prepare 4th quarter status report. | J. McManus | 0.20 | 63.00 |
| 01/28/16 | Assist J. McManus with quarterly status update. | J. Ziegler | 0.40 | 42.00 |
| 04/08/16 | Revise first quarter case status report. | J. McManus | 0.10 | 31.50 |
| 04/08/16 | Assist J. McManus with case status update. | J. Ziegler | 0.20 | 21.00 |
| 06/17/16 | Revise 2nd quarter case status report. | J. McManus | 0.20 | 63.00 |
| 06/28/16 | Prepare Seyfarth retention motion (.70); prepare Harper Affidavit (.50); prepare service list (.40); confer with J. Ziegler regarding finalizing same (.10). | J. McManus | 1.70 | 535.50 |
| 06/28/16 | Assist J. McManus with drafting application to retain Seyfarth and Harper affidavit. | J. Ziegler | 2.50 | 262.50 |
| 06/29/16 | Revise Harper Affidavit in support of Seyfarth's retention. | J. McManus | 0.30 | 94.50 |
| 07/06/16 | Prepare 2nd quarter case status report. | J. McManus | 0.20 | 63.00 |
| 07/07/16 | Consult with J. McManus regarding case status. | J. Ziegler | 0.20 | 21.00 |
| 07/11/16 | Revise Harper Affidavit regarding Seyfarth's retention. | J. McManus | 0.50 | 157.50 |
| 07/12/16 | Finalize application to retain Seyfarth in preparation for filing (.40); prepare proposed Order (.20); revise Service List (.20); finalize chart for Harper Affidavit (.30). | J. McManus | 1.10 | 346.50 |
| 07/13/16 | Revise 2nd quarter status report. | J. McManus | 0.20 | 63.00 |
| 07/13/16 | Effect filing and service of application to retain Seyfarth. | J. McManus | 0.20 | 63.00 |
| 07/27/16 | Appear on motion to compromise and motion to retain Seyfarth. | G. Paloian | 0.90 | 625.50 |
| 09/07/16 | Prepare case status report. | J. McManus | 0.30 | 94.50 |
| 09/22/16 | Review order on objection to exemptions (.10); email correspondence with G. Paloian regarding same (.10). | C. Harney | 0.20 | 83.00 |
| 11/07/16 | Draft L. West Affidavit for retention. | J. McManus | 0.20 | 63.00 |
| 11/30/16 | Prepare 3rd quarter case status report. | J. McManus | 0.20 | 63.00 |
| 12/27/16 | Prepare 4th quarter case status report. | J. McManus | 0.20 | 63.00 |
| 01/03/17 | Revise 4th quarter status report. | J. McManus | 0.20 | 63.00 |
| 01/17/17 | Review motion to retain accountant. | B. Harper | 0.30 | 106.50 |
| 01/17/17 | Confer with L. West regarding retention (.10); prepare Application to Retain Kutchins, Robbins & Diamond (.80); prepare proposed Order (.20). | J. McManus | 1.10 | 346.50 |
| 01/17/17 | Revise 4th quarter status report. | J. McManus | 0.10 | 31.50 |
| 01/18/17 | Update case service list (.20); revise application to retain accountant (.10); revise proposed Order (.10); effect filing of application/service (.20). | J. McManus | 0.60 | 189.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 01/30/17 | Attend to estate tax matters. | G. Paloian | 0.20 | 139.00 |
| 02/06/17 | Conduct google search for new address for returned notice of Trustee's application to retain accountant (.20); update service list with same (.20); effect mailing of same to new address (.20). | J. Ziegler | 0.60 | 63.00 |
| 02/27/17 | Conduct google search for returned notice of application to employ accountant (.20); update service list (.10). | J. Ziegler | 0.30 | 31.50 |
| 03/24/17 | Draft KRD fee application (1.30); consult with J. McManus regarding same (.20). | J. Ziegler | 1.50 | 157.50 |
| | **TOTAL** | | **14.90** | **$3,946.50** |

## CLAIMS ADMINISTRATION AND ANALYSIS

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 07/29/14 | Prepare claims analysis spreadsheet. | J. McManus | 0.40 | 114.00 |
| 08/05/14 | Revise claims analysis spreadsheet (.30); confer with G. Paloian regarding same (.10). | J. McManus | 0.40 | 114.00 |
| 08/27/14 | Review claims register. | J. McManus | 0.10 | 28.50 |
| 03/08/16 | Claims review/analysis. | J. McManus | 0.50 | 157.50 |
| 07/05/16 | Prepare claims analysis spreadsheet. | J. McManus | 0.30 | 94.50 |
| 07/06/16 | Review claims resolution status. | J. McManus | 0.20 | 63.00 |
| 09/06/16 | Review claims with G. Paloian. | J. McManus | 0.20 | 63.00 |
| | **TOTAL** | | **2.10** | **$634.50** |

## INVESTIGATION OF ESTATE CLAIMS/LITIGATION

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 07/27/15 | Review litigation status report. | G. Paloian | 0.20 | 137.00 |
| 07/27/15 | Prepare litigation status report received from litigation counsel. | J. McManus | 0.10 | 30.00 |
| 10/16/15 | Review case dockets for two lawsuits in which Debtor is involved to determine status. | J. Ziegler | 0.40 | 40.00 |
| 03/01/16 | Consult with J. McManus regarding litigation case status (.20); review docket for same (.20). | J. Ziegler | 0.40 | 42.00 |
| 03/02/16 | Review docket of class action lawsuit (Jackson v. Comcast) (.30); review proposed settlement of class action (settlement agreement and approval motion) (.80); telephone conference with class counsel regarding estate interest in Jackson recovery (.20); prepare correspondence regarding same (.20); communicate with J. McManus regarding follow up with claims administrator (.20). | G. Paloian | 1.70 | 1,181.50 |
| 05/05/16 | Investigate status of estate litigation claims. | G. Paloian | 0.20 | 139.00 |
| 05/05/16 | Contact PI attorney for update on settlement. | J. Ziegler | 0.20 | 21.00 |
| 06/13/16 | Communications with Noelle Brennon regarding Kevin Jackson estate interest in Comcast litigation settlements. | G. Paloian | 0.30 | 208.50 |
| 06/21/16 | Communications with N. Brennan regarding Jackson/Comcast settlements. | G. Paloian | 0.20 | 139.00 |
| 06/27/16 | Telephone conference with S. Alamuddin regarding settlement agreements and bankruptcy court approval (.30); review settlement agreements (.30); prepare settlement motion (.50). | G. Paloian | 1.10 | 764.50 |
| 06/27/16 | Assemble all correspondence with Debtor's counsel for G. Paloian (.20); confer with G. Paloian regarding settlement matters (.10); email communications with L. Farmer (.10); prepare motion to compromise controversy (.80); draft motion to retain Seyfarth Shaw (.60). | J. McManus | 1.80 | 567.00 |
| 06/28/16 | Review settlement Brand wage case settlement agreement (.20); revise Brand race case settlement agreement (.20); revise motion to compromise controversy (.70); confer with G. Paloian regarding same (.10). | J. McManus | 1.20 | 378.00 |
| 06/29/16 | Prepare application to compromise controversies (Brand Wage case and Brand Race case). | G. Paloian | 1.10 | 764.50 |
| 06/29/16 | Revise motion to compromise controversy (1.10); confer with G. Paloian regarding same (.10). | J. McManus | 1.20 | 378.00 |
| 06/30/16 | Revise motion to compromise controversy (.80); revise service list (.40). | J. McManus | 1.20 | 378.00 |
| 07/05/16 | Prepare Rule 9019 motion to authorize compromises with Comcast. | G. Paloian | 0.80 | 556.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 07/05/16 | Revise motion to compromise controversies (.40); prepare proposed approval order (.30); revise Harper Affidavit (.30). | J. McManus | 1.00 | 315.00 |
| 07/06/16 | Revise Rule 9019 motion and order (.40); communications with J. McManus regarding revisions to motion and order (.20). | G. Paloian | 0.60 | 417.00 |
| 07/06/16 | Finalize motion to compromise controversies (.50); revise proposed Order (.10); email communications with S. Alamuddin regarding same (.10); cause motion to be filed with the Court (.20). | J. McManus | 0.90 | 283.50 |
| 08/03/16 | Communications with J. McManus regarding receipt of settlement checks. | G. Paloian | 0.20 | 139.00 |
| 08/05/16 | Communications with Comcast counsel (Allison Powers) and J. McManus regarding W-9 statement issues and delivery of settlement proceeds. | G. Paloian | 0.30 | 208.50 |
| 08/10/16 | Communications with Comcast counsel regarding Jackson regular payroll checks vs. settlement checks. | G. Paloian | 0.20 | 139.00 |
| 08/10/16 | Review settlement orders to confirm payment amounts (.10); email communications with A. Tuffuour regarding Comcast settlement payments (.30). | J. McManus | 0.40 | 126.00 |
| 08/11/16 | Telephone conference with Allison Powers (Comcast attorney) regarding settlement payment (1099 and W-2) (.30); communicate with J. McManus regarding W-2 issue with Comcast (.20). | G. Paloian | 0.50 | 347.50 |
| 08/22/16 | Communicate with A. Powers regarding Comcast settlement fund issue. | G. Paloian | 0.20 | 139.00 |
| 09/16/16 | Communicate with A. Powers (Comcast counsel) regarding settlement proceeds. | G. Paloian | 0.20 | 139.00 |
| 09/20/16 | Communicate with Comcast counsel regarding settlement proceeds. | G. Paloian | 0.20 | 139.00 |
| 10/11/16 | Review settlement agreements (.30); contact settlement administrator regarding future settlement payments to estate (.30). | G. Paloian | 0.60 | 417.00 |
| 11/01/16 | Follow up regarding final settlement payments. | J. McManus | 0.20 | 63.00 |
| 11/03/16 | Telephone conference with B. Hughes of First Class, Inc. regarding award letters and checks. | G. Paloian | 0.20 | 139.00 |
| 12/13/16 | Review notice of monetary award in the Brand v. Comcast settlement. | G. Paloian | 0.20 | 139.00 |
| | **TOTAL** | | **18.00** | **$8,874.50** |

## OBJECTION TO EXEMPTIONS

| **Date** | **Description** | **Timekeeper** | **Hours** | **Value** |
|---|---|---|---|---|
| 07/05/16 | Review Debtor's amended exemptions (.10); investigate amended exemptions and objection (.20); communicate with C. Harney regarding objection to exemption (.20). | G. Paloian | 0.50 | 347.50 |
| 07/05/16 | Review amended claimed exemptions filed by Debtor's counsel (.10); review cited statute regarding same (.20); confer with G. Paloian regarding same (.10); confer with C. Harney regarding objection to claimed exemption (.10). | J. McManus | 0.50 | 157.50 |
| 07/05/16 | Download statutes referenced in schedule C per G. Paloian's request. | J. Ziegler | 0.40 | 42.00 |
| 07/26/16 | Communicate with C. Harney regarding objection to exemption. | G. Paloian | 0.20 | 139.00 |
| 07/26/16 | Email correspondence with G. Paloian regarding objection to exemptions. | C. Harney | 0.10 | 41.50 |
| 07/27/16 | Review/comment on objection to exemption. | G. Paloian | 0.20 | 139.00 |
| 07/27/16 | Research cited objections by Debtor (1.00); preparation of objection to exemptions (1.00). | C. Harney | 2.00 | 830.00 |
| 07/27/16 | Revise objection to Debtor's exemptions (.60); prepare Exhibit A (.30); prepare revised service list (.20); email communications with C. Harney regarding same (.10). | J. McManus | 1.20 | 378.00 |
| 07/28/16 | Review Objection and Proposed order to objection to exemption (.30); conference and email correspondence with J. McManus regarding same (.10). | C. Harney | 0.40 | 166.00 |
| 07/28/16 | Revise objection to Debtor's claimed exemptions (.30); prepare proposed Order (.30); revise notice of hearing (.10); effect filing of objection (.20). | J. McManus | 0.90 | 283.50 |
| 08/17/16 | Telephone conference with G. Silver of UST office regarding debtor complaint about settlement agreements and objection to exemptions (.20); communications with C. Harney regarding objection to exemptions (.20). | G. Paloian | 0.40 | 278.00 |
| 08/17/16 | Conference with G. Paloian regarding K. Jackson objection. | C. Harney | 0.20 | 83.00 |
| 08/18/16 | Communications with C. Harney regarding Jackson objection to Estate exemption objection (.30); communications with G. Silver (UST office) regarding Jackson complaint (.20). | G. Paloian | 0.50 | 347.50 |
| 08/18/16 | Review objection and case law prior to hearing (.40); Attend K. Jackson hearing (1.00); email and conference with G. Paloian regarding same (.20). | C. Harney | 1.60 | 664.00 |
| 08/22/16 | Review Debtor objection to Trustee's objection to exemption (.30); communicate with C. Harney regarding follow up research (.20). | G. Paloian | 0.50 | 347.50 |
| 08/31/16 | Communicate with debtor's counsel regarding In Re Meyer and impact on exemptions. | G. Paloian | 0.20 | 139.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 08/31/16 | Email correspondence with Amy Donahoe and G. Paloian regarding objection to debtor's exemption. | C. Harney | 0.10 | 41.50 |
| 09/02/16 | Review case law supporting objection to exemption (Radzilowsky, Royer, Thum, Jokiel, Koenenman). | G. Paloian | 0.80 | 556.00 |
| 09/06/16 | Telephone conference with Jackson counsel regarding objection to exemption, settlement payments and potential surplus estate. | G. Paloian | 0.30 | 208.50 |
| 09/06/16 | Email correspondence with G. Paloian regarding debtor's proposed resolution of objection to exemption. | C. Harney | 0.10 | 41.50 |
| 09/13/16 | Review response to objection to exemption. | G. Paloian | 0.20 | 139.00 |
| 09/15/16 | Prepare reply to objection to exemption (2.50); edit according to G. Paloian's edits (.30); conference with G. Paloian regarding same (.10). | C. Harney | 2.90 | 1,203.50 |
| 09/15/16 | Proofread reply to objection to claim of exemption. | J. Ziegler | 0.40 | 42.00 |
| 09/16/16 | Conference with J. McManus regarding reply to objection. | C. Harney | 0.10 | 41.50 |
| 09/16/16 | Revise Trustee's Reply to Response to Trustee's Objection to Debtor's Claimed Exemptions in preparation for filing (.30); prepare certificate of service (.10); cause objection to be filed with the Court (.10). | J. McManus | 0.50 | 157.50 |
| 09/20/16 | Communicate with C. Harney regarding objection to exemption and attorney withdrawal. | G. Paloian | 0.20 | 139.00 |
| 09/20/16 | Conference with G. Paloian regarding objection hearing. | C. Harney | 0.10 | 41.50 |
| 09/21/16 | Review objection and case law in preparation of hearing on objection to exemptions (1.50); in court for hearing (1.20); email correspondence with G. Paloian regarding same (.10). | C. Harney | 2.80 | 1,162.00 |
| 09/22/16 | Communicate with C. Harney regarding court grant of objection to exemption. | G. Paloian | 0.20 | 139.00 |
| 10/06/16 | Revise response to objection. | J. McManus | 0.30 | 94.50 |
| 10/13/16 | Review Jackson response to Trustee objection. | G. Paloian | 0.30 | 208.50 |
| 10/13/16 | Review Debtor's response to objection to exemption and correspondence and conference with G. Paloian regarding same. | C. Harney | 0.40 | 166.00 |
| 10/14/16 | Review Debtor's response to objection to claim exemptions. | J. McManus | 0.20 | 63.00 |
| 10/18/16 | Review Jackson response. | G. Paloian | 0.20 | 139.00 |
| 10/31/16 | Review Debtor's Motion to Stay (.50); brief research regarding same (.50); outline of argument (.30); voice-mail to G. Paloian regarding same (.10); conference calls with J. McManus regarding expected distributions, cash on hand and expected surplus (.10). | C. Harney | 1.50 | 622.50 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 10/31/16 | Email exchanges with C. Harney to prepare for hearing on objection to claims (.30); draft proposed distribution regarding same (.30); review settlement agreements and case docket regarding same (.20). | J. McManus | 0.80 | 252.00 |
| 11/01/16 | Communications with C. Harney regarding presentation of Jackson's motion to stay distribution. | G. Paloian | 0.20 | 139.00 |
| 11/01/16 | Review Defendant's Motion to Stay Distribution in advance of hearing (.30); review cited case law and citations in preparation of same (.30); review relevant citations to docket regarding same and prior pleadings on objection to claimed exemption (.40); in court for hearing (1.10). | C. Harney | 2.10 | 871.50 |
| 11/01/16 | Prepare for Court hearing on objection to claim exemption (.10); confer with C. Harney regarding same (.10). | J. McManus | 0.20 | 63.00 |
| | **TOTAL** | | **24.70** | **$10,914.50** |

## FEE APPLICATIONS

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 12/16/16 | Prepare Trustee fee application. | J. McManus | 1.30 | 409.50 |
| 12/22/16 | Prepare Seyfarth fee application. | J. McManus | 1.00 | 315.00 |
| 12/22/16 | Prepare Trustee Fee Application. | J. McManus | 0.90 | 283.50 |
| 12/28/16 | Revise Trustee Fee Application. | J. McManus | 0.80 | 252.00 |
| 01/18/17 | Review/edit time detail for first and final fee applications of Seyfarth and Trustee. | J. McManus | 0.50 | 157.50 |
| 02/09/17 | Revise Seyfarth fee application. | J. McManus | 0.50 | 157.50 |
| 03/20/17 | Draft accountant fee application. | J. McManus | 0.50 | 157.50 |
| 03/21/17 | Review/edit Seyfarth fee time detail. | J. McManus | 0.30 | 94.50 |
| 04/27/17 | Revise Seyfarth fee application. | J. McManus | 0.80 | 252.00 |
| 05/08/17 | Revise Seyfarth's final fee application. | J. McManus | 0.60 | 189.00 |
| 05/17/17 | Prepare Kutchins first and final fee application. | J. McManus | 0.70 | 220.50 |
| 06/07/17 | Revise Accountant Final Fee Application. | J. McManus | 0.50 | 157.50 |
| 06/08/17 | Revise Seyfarth's final fee application, Exhibit 2. | J. McManus | 0.90 | 283.50 |
| 06/21/17 | Revise accountant fee application (.40); prepare proposed Order (.10). | J. McManus | 0.50 | 157.50 |
| | **TOTAL** | | **9.80** | **$3,087.00** |

**Total Fees**                                                                 **$27,457.00**

| Description | Hours | Value |
|---|---|---|
| Case Administration | 14.90 | $3,946.50 |
| Claims Administration and Analysis | 2.10 | $634.50 |
| Investigation of Estate Claims/Adversary Proceedings/Litigation | 18.00 | $8,874.50 |
| Objection to Exemptions | 24.70 | $10,914.50 |
| Fee Applications | 9.80 | $3,087.00 |
| | **69.50** | **$27,457.00** |

# EXHIBIT 3

39691053v.1

## DISBURSEMENTS

| **Date** | **Disbursements** | **Value** |
|---|---|---|
| | **Copying** | |
| 01/28/15 | Copying  (2 copies @ $0.10 per page) | 0.20 |
| 09/25/16 | Copying  (5 copies @ $0.10 per page) | 0.50 |
| 02/14/17 | Copying  (3 copies @ $0.10 per page) | 0.30 |
| | | |
| | **Online Research** | |
| 05/15/15 | Online Research - PACER SERVICE CENTER 1st Quarter 2015 | 3.90 |
| 05/19/16 | Online Research - PACER SERVICE CENTER - Pacer Charges 1st Quarter 2016 | 9.80 |
| 07/27/16 | ONLINE RESEARCH INVOICE: 1607001538 OFFICE: USER: HARNEY, CHRISTOPHER  J LEXIS LEGAL SERVICES SINGLE DOCUMENT RETRIEVAL | 58.63 |
| 07/28/16 | ONLINE RESEARCH INVOICE: 1607001538 OFFICE: USER: HARNEY, CHRISTOPHER  J LEXIS LEGAL SERVICES SINGLE DOCUMENT RETRIEVAL | 29.31 |
| 07/28/16 | ONLINE RESEARCH INVOICE: 1607001538 OFFICE: USER: HARNEY, CHRISTOPHER  J LEXIS LEGAL SERVICES SEARCHES | 93.63 |
| 09/02/16 | ONLINE RESEARCH INVOICE: 1609001522 OFFICE: USER: HARNEY, CHRISTOPHER  J SHEPARD'S SERVICE LEGAL CITATION SERVICES | 2.37 |
| 09/02/16 | ONLINE RESEARCH INVOICE: 1609001522 OFFICE: USER: HARNEY, CHRISTOPHER  J LEXIS LEGAL SERVICES DOCUMENT PRINTING | 41.20 |
| 09/02/16 | ONLINE RESEARCH INVOICE: 1609001522 OFFICE: USER: HARNEY, CHRISTOPHER  J LEXIS LEGAL SERVICES SINGLE DOCUMENT RETRIEVAL | 58.59 |
| 11/11/16 | Online Research - PACER SERVICE CENTER - Pacer Charges 3rd Quarter 2016 | 3.70 |
| 02/10/17 | Online Research - PACER SERVICE CENTER - Pacer Charges 4th Quarter 2016 | 11.60 |

**Total Disbursements**     313.73

**Total Fees And Disbursements This Statement**     $27,770.73